# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ANGEL ALFONSO CANCHE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner Of Social Security,<br><br>Defendant. | Case No. CV 17-4380-AS<br><br>**MEMORANDUM OPINION** |

# PROCEEDINGS

On June 13, 2017, Plaintiff filed a Complaint seeking review of the denial of his application for Supplemental Security Income ("SSI"). (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12). On November 13, 2017, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 15, 16). On June 13, 2018, the parties filed a Joint Stipulation ("Joint Stip."), setting forth their respective positions regarding Plaintiff's claim. (Dkt. No. 23).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On June 27, 2013, Plaintiff, a former truck driver, (see AR 225), filed his SSI application alleging an inability to work because of a disability since April 20, 2010. (AR 196, 216). On November 30, 2015, an Administrative Law Judge, Joel Martinez ("ALJ"), heard testimony from a vocational expert, Elizabeth Brown-Ramos ("VE"), and Plaintiff, who was represented by counsel. (AR 50-78). The ALJ issued a decision denying Plaintiff's application on January 22, 2016. (AR 37-45).

The ALJ applied the five-step sequential process in evaluating Plaintiff's case. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 27, 2013, the application date. (AR 39). At step two, the ALJ found that Plaintiff's lumbar spine degeneration is a severe impairment.[1] (Id.). At step three, the ALJ found that Plaintiff's impairments do not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 40). Before

---

[1] The ALJ found Plaintiff's right inguinal hernia surgical repair to be non-severe. (AR 40).

2

proceeding to step four, the ALJ found that Plaintiff has the following Residual Functional Capacity ("RFC")[2]:

> [Plaintiff can] perform light work . . . except [he] can occasionally perform postural activities, can occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds, and should avoid all exposure to heights, hazards, or extreme temperatures.

(Id.). At step four, the ALJ noted that Plaintiff is unable to perform any past relevant work. (AR 43). Relying on the VE's testimony at step five, the ALJ found that Plaintiff, with his age (forty-nine on the application date), education, work experience, and RFC, can perform the following representative jobs existing in significant numbers in the national economy: "basket filler" (Dictionary of Occupational Titles ("DOT") 529.687-010) and "bagger garment" (DOT 920.687-018). (AR 44). Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since June 27, 2013, the date the application was filed." (Id.).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 14, 2017. (AR 1-4). Plaintiff now seeks judicial review of the ALJ's decision which stands as the

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

Plaintiff's one claim in this action is that the ALJ failed to properly consider his testimony. (Joint Stip. at 4-14). After considering the record as a whole, the Court disagrees. As

set forth below, the Commissioner's findings are supported by substantial evidence and are free from material legal error.[3]

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996), superseded on other grounds, 20 C.F.R. § 404.1529(c)(3). Instead, the

---

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Id. at 1284. Absent affirmative evidence of malingering, however, the ALJ may reject a plaintiff's testimony only if the ALJ makes "specific findings stating clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Id. An ALJ may also consider observations of treating and examining physicians and other third parties. Id.

Here, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."

(AR 41). The ALJ provided three clear and convincing reasons to find Plaintiff's statements about his symptoms "not entirely credible": (1) inconsistency with the objective medical evidence; (2) Plaintiff's overall treatment history; and (3) Plaintiff's activities of daily living. (AR 41-42).

**Objective Medical Evidence**

Reviewing the objective evidence, the ALJ pointed out, for example, that an examination in August 2013 showed "normal muscle bulk and tone without atrophy" and "5/5 motor strength." (AR 41; see AR 358). The ALJ also remarked that in January 2015, Plaintiff "noted that he had a painful gait, [but] there was no evidence of the use of a cane." (AR 41; see AR 512). A September 2015 examination, moreover, showed "5/5 motor strength in the lower extremities bilaterally." (AR 41; see AR 542). The ALJ reasonably found such objective medical evidence "inconsistent with [Plaintiff's] allegations that he is unable to perform any work activity." (AR 41).

Plaintiff contends that the ALJ impermissibly considered the objective evidence "because a rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient." (Joint Stip. at 7-8). However, while the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations," Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009), the ALJ "must consider whether

an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record," SSR 16-3p, at *5 (emphasis added). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

Here, the ALJ did not reject Plaintiff's subjective symptoms solely because of a lack of evidence to support Plaintiff's allegations. Instead, the ALJ appropriately discredited Plaintiff's statements because they are <u>inconsistent</u> with the medical evidence in the record, along with other evidence such as Plaintiff's treatment history and activities of daily living. Substantial evidence in the record supports the ALJ's finding that Plaintiff's statements are inconsistent with the objective medical evidence, and Plaintiff does not point to any evidence in the record to show otherwise. Furthermore, multiple physicians opined that Plaintiff can perform light work, including consultative examiner Azizollah Karamlou, M.D., and state agency reviewing physician S. Laiken, M.D. (AR 96-97, 356-60).

Thus, the ALJ properly discredited Plaintiff's symptom testimony based on the contravening medical record. Carmickle, 533 F.3d at 1161.

**Conservative Treatment**

In concluding that Plaintiff's treatment history contradicted his allegations, the ALJ observed that Plaintiff "was given conservative measures for treatment," such as physical therapy and pain medication. (AR 41). This is an appropriate basis for discounting Plaintiff's testimony. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (ALJ may properly infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment"); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."). Specifically, the ALJ remarked that Plaintiff's "pain appears to be managed with pain medications." (AR 41). The ALJ noted, for example, that in September 2015, Plaintiff told his physician that "he had pain but that it was managed with pain medications." (Id.; see AR 541). Plaintiff stated that his pain was 3/10 with medications, in contrast to 10/10 without medication. (AR 541). Aside from medications, the ALJ pointed out that Plaintiff "was referred for core strengthening" in September 2012, and he was "advised to consider pool therapy, and was scheduled for a trigger point injection" in May 2015. (AR 41; see AR 335, 489).

9

Plaintiff contends that the ALJ was "wrong" in concluding that Plaintiff's treatment has been conservative because his use of narcotic pain medications is not conservative treatment, and no other non-conservative treatment options were available to him. (Joint Stip. at 11-12). The record, however, supports the ALJ's finding that Plaintiff's level of treatment conflicted with his allegations of debilitating pain. As noted, Plaintiff's medications substantially reduced his pain, (see AR 541), and his physicians continued to prescribe this treatment, along with physical therapy and an occasional trigger point injection, rather than recommending surgery or other aggressive treatment. (See, e.g., AR 498, 503, 519, 542, 583). Nothing in the record suggests that more aggressive treatments were unavailable, and it is reasonable to infer from the lack of such treatment that Plaintiff's condition was adequately managed by the medications and thus less severe than alleged. Based on this record, the ALJ reasonably determined that Plaintiff's course of treatment conflicted with his allegations of debilitating back pain. See Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ properly considered evidence suggesting that claimant responded well to treatment in rejecting claimant's testimony); see also Tommasetti, 533 F.3d at 1040 ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset.").

Accordingly, the ALJ properly discounted Plaintiff's subjective pain testimony on this ground.

**Activities of Daily Living**

Plaintiff's ability to perform various everyday activities is also a legitimate basis to discount his credibility. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (claimant's allegations of disability properly discredited where claimant was able to care for her own personal needs, cook, clean, shop, interact with her boyfriend, and manage finances). Here, among other observations, the ALJ noted that in September 2012, Plaintiff "was independent in activities of daily living and ambulatory without an assistive device," and Plaintiff also reported in September 2015 that he could perform his activities of daily living. (AR 41; see AR 335, 541). Even if Plaintiff's activities do not show that he was unimpaired, the ALJ reasonably found these admitted activities to be inconsistent with the level of impairment that Plaintiff alleged. See Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ also pointed to an inconsistency among Plaintiff's statements that additionally eroded his credibility. In the November 2015 hearing, Plaintiff testified that he did not use a cane, and he can walk for thirty minutes at a time, stand for

twenty minutes, and sit for two hours. (AR 42; see AR 67). The ALJ contrasted this testimony with questionnaire responses in July 2013 indicating that Plaintiff used a cane and could walk about twenty feet and stand or sit for about ten minutes at a time. (AR 42; see AR 231-32). The ALJ found that this apparent inconsistency in Plaintiff's reports "tends to raise questions about the reliability of [Plaintiff's] statements." (AR 42).

Thus, the ALJ properly discounted Plaintiff's symptom statements based on their inconsistency with his daily activities.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 19, 2018

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE